**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EBONY CAIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON HEALTH TECH NORTH AMERICA, INC.<br><br>Defendant. | Case No.  5:23-cv-195<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Ebony Cain ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Johnson Health Tech North America, Inc. ("Defendant") for the manufacture, marketing, and sale of Horizon Fitness T101-05 treadmill products identified below.  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action against Defendant Johnson Health Tech North America, Inc. for the manufacture and sale of its Horizon Fitness T101-05 treadmills (collectively, the "Products"), all of which suffer from an identical defect in design. Specifically, the treadmills can unexpectedly accelerate, change speed, or stop without user input, posing an injury and fall hazard.  Such a design defect is extraordinarily dangerous and has rendered the Products unsuitable for their principal and intended purpose.

2.      Due to the dangerous nature of the defect, Defendant initiated a recall (the "Recall") of its Horizon Fitness T101-05 treadmills.[1]  However, the Recall is grossly inadequate, as it does not provide consumers, like Plaintiff, with any monetary relief, and it fails to provide direct notice to consumers.

3.      Plaintiff brings her claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; (3) fraud; (4) unjust enrichment; (5) breach of implied warranties; and (6) violations of the Magnuson-Moss Warranty Act.

---

[1] https://www.cpsc.gov/Recalls/2023/Johnson-Health-Tech-Trading-Recalls-Horizon-Fitness-Treadmills-Due-to-Fall-Hazard

**PARTIES**

4.      Plaintiff Ebony Cain is, and at all times relevant to this action has been, a resident of San Bernardino, California.  In approximately April 2021, Ms. Cain purchased a Horizon Fitness T101-05 Treadmill from Defendant's online website. Ms. Cain purchased the Product because she believed it was fit for use as a treadmill. However, the Product Ms. Cain purchased was not fit for use as a treadmill due to the Product's Defect.  Ms. Cain would not have purchased the Product had she known that the Product was unfit to perform its intended purpose, rendering the Product useless.

5.      Ms. Cain no longer uses the Product because of the significant injury risk posed by the Defect.  The serial number on the Product purchased by Ms. Cain begins with TM486 and is included in Defendant's product recall.

6.      Ms. Cain reviewed the Product's packaging prior to purchase. Defendant disclosed on the packaging that the Product was a treadmill and described features typical of treadmills but did not disclose the Defect.  Had there been a disclosure, Ms. Cain would not have bought the Product because the Defect would have been material to her, or at the very least, she would have purchased the Product at a substantially reduced price.  Ms. Cain relied on the packaging in making her purchase decision.  Ms. Cain continues to desire to purchase the Product from Defendant and knows that the composition of the Product may change over time. She is unable, however, to determine if the Product is safe and will perform as intended.

7.      Defendant Johnson Health Tech North America, Inc. is a Wisconsin corporation with its principal place of business at 1600 Landmark Drive, Cottage Grove, Wisconsin.  Defendant manufactures, markets, and distributes the Products throughout the United States.  Defendant sells its products directly to consumers in Dick's Sporting Goods and other retail stores as well as on its online website.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased her Product in this District.

## COMMON FACTUAL ALLEGATIONS

**The Defect**

11.     Defendant is a manufacturer of exercise equipment.  Among the various exercise equipment sold by Defendant are its Horizon Fitness T101-05 Treadmills, which are the Products at issue here.  The Products are identical and include those manufactured between March 2018 through October 2022, and include the serial numbers starting with TM734 and TM486.

12.      The Products were made with a defect involving functional electronic components, wherein the treadmills can unexpectedly accelerate, change speed, or stop without user input (hereinafter, the "Defect").  The Defect poses an injury and fall hazard, effecting the ordinary use of the Products.  In fact, between March 2018 through October 2022, Defendant received at least 874 reports where the treadmills unexpectedly changed speed or stopped, including 71 reports of injury, including bruises, abrasions, and two broken bones.[2]  The Defect is substantially likely to materialize during the useful life of the Product.

---

[2] *Id.*

13. With over 190,000 units sold at approximately $699 each, Defendant profited enormously from its failure to disclose the Product Defect sooner.

14. The Defect at issue here renders the Products unsafe to operate. Defendant had exclusive knowledge of the Defect, which was not known to Plaintiff or class members.

15. Defendant made partial representations to Plaintiff and class members, while suppressing the Defect. Specifically, by displaying the Products and describing their features, the product packaging implied that the Products were suitable for use as a treadmill, without disclosing that they had a critical safety-related defect that could result in harm to users of the Products.

**Defendant's Inadequate Recall**

16. On October 27, 2022, Defendant issued a recall of the Products.

17. The recall was due to a serious injury hazard associated with the Products. Specifically, Defendant admitted that its Products had a defect in design and materials that caused the treadmills to unexpectedly accelerate, change speed, or stop without user input.

18. Defendant sold over 190,000 Products in the United States.

19. Importantly, Defendant is <u>not</u> offering consumers any monetary relief due to the Defect.

20. The recall allowed Defendant to *say* it was doing right by its customers, but in fact the recall protected Defendant's profits by suppressing returns:

(a) The recall notice was only briefly publicized;

(b) Defendant's website contained a link to recall information, but the link was buried among a lengthy list of other links, and class members would not have a reason to follow the link if they did not already know about the recall in the first place;

(c)     Defendant did not email people who purchased Products online, despite the fact that email notice is a relatively low-cost and effective means of contacting consumers; and

(d)     Defendant only offered software updates in connection with the recall.  Defendant did not offer cash refunds in lieu of an update, and customers' requests for cash refunds were generally denied.

**Defendant's Pre-Sale Knowledge Of The Defect**

21.     Years before issuing the recall, Defendant had received numerous reports of the Defect.

22.     The United States Consumer Products Safety Commission ("CPSC") operates a website where consumers can post complaints about unsafe products and provide details about any incidents they experienced.

23.     Online safety reports to the CPSC show that Defendant knew or should have known of the defect since at least 2018, yet it continued to sell the defective Products anyway.

24.     Per federal regulations, all safety reports that are submitted online through the CPSC website are sent directly to the product's manufacturer.  As set forth in more detail below, the CPSC website indicates that all safety complaints referenced herein were sent to Defendant, including the dates on which they were sent.  Defendant also monitors safety complaints from the CPSC, and thus Defendant would have independently become aware of each safety report referenced herein separate and apart from noticed received from the CPSC.

25.     The Recall includes Products that have been manufactured since March 2018.  Since that time, Defendant has received **874 reports** from consumers regarding the treadmills unexpectedly changing speed or stopping, including 71 reports of injury, including bruises, abrasions, and two broken bones.[3]

---

[3] *Id.*

26.     At minimum, such an unusually high number of reports about the same exact issue, as well as the severity of the injuries reported, should have alerted Defendant to the Defect and caused it to take immediate action to protect consumers.

27.     Every time the CPSC's website receives a consumer complaint, a copy of the complaint is automatically sent to the manufacturer, and the CPSC website discloses when it was sent to the manufacturer.  This is separate from the portion of the safety complaint where the consumer states whether he or she independently contacted the manufacturer.  Therefore, all complaints were sent to Defendant by the CPSC shortly after being submitted to the CPSC.

28.     Defendant's management knew or should have known about the above-referenced reports as soon as they began appearing on the CPSC website in 2018:

(a)     First, Defendant was repeatedly contacted hundreds of times directly by consumers and/or by the CPSC about the Defect.

(b)     Second, the CPSC website is a government-run repository for complaints about safety-related defects, and many of Defendant's products appear on the website.  The CPSC website can provide businesses with early warnings of product defects, and monitoring reports is easy because users can search for reports by company names.  Hence, since at least 2018, it required negligible effort for Defendant's management and other personnel to visit the CPSC website, type "Horizon Fitness" in the search field, and view a list of reports of safety incidents related to Horizon Fitness products, including reports about the Defect at issue here.

29.     In addition to receiving safety complaints from the CPSC, Defendant also knew or should have known about the Defect through reviews posted on its own website.  Indeed, multiple consumers posted product reviews about the Product's Defect to Defendant's own website, www.horizonfitness.com, which is also monitored by Defendant.  A couple examples are shown below.

30.    In May 2021, a consumer posted a review on Defendant's website warning that the Horizon Fitness 101 Treadmill "shuts off mid workout" and therefore is "dangerous."



31.    In June 2021, another consumer posted a review on Defendant's website warning that the Horizon Fitness 101 Treadmill "started randomly stopping." In addition, the treadmill caused the consumer "physical injuries."

32.    In February 2021, another consumer posted a review on Defendant's website concerning the Defect in the Horizon Fitness 101 Treadmill. The review stated: "Since the beginning it abruptly shuts itself off when running over 8mph."



33.     Defendant would have seen the above-described warnings on its own website.  Online reputation management (commonly called "ORM" for short), is now a standard business practice among most major companies and entails monitoring consumer forums, social media and other sources on the internet where consumers can review or comment on products.  "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content, which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[4]  Many companies offer ORM consulting services for businesses.

34.     Like most companies, Defendant cares about its reputation and regularly monitors online customer reviews because they provide valuable data regarding quality control issue, customer satisfaction and marketing analytics.  One and two-star reviews like those displayed above would be particularly attention-grabbing for Defendant's management because extreme reviews are sometimes the result of extreme problems, and—just like any other company—Defendant is sensitive to the reputational impact of negative online reviews.  Hence, Defendant's management knew or should have known about the above-referenced consumer complaints shortly after each complaint was posted on Defendant's company website.

35.     Defendant's management also knew or should have known about the Defect because of the similarity of complaints to the CPSC and on Defendant's website.  The fact that hundreds upon hundreds of customers made similar complaints about the same product indicates that the complaints were not the result of user error or an anomalous incident, but instead a systemic problem with the Product.  Here, the reports and complaints from consumers—whether made directly to Defendant's employees, posted on Defendant's website, or forwarded from the

---

[4] https://en.wikipedia.org/wiki/Reputationmanagement#Online_reputation_management

CPSC—were similar enough to put Defendant's management on notice that the incidents described were the result of a defect, and that the Products were experiencing unusually high levels of complaints about the Defect.

36.     Defendant also would have had notice of the Defect as a result of product warranty claims.  Before accepting a return, Defendant's policy is to ask each customer for a description of the request and to keep track of the reasons given. Descriptions provided with return requests of the Products therefore would have disclosed the defect.

37.     In short, by 2018 at the latest, information from customer returns, complaints directly to Defendant, negative reviews on Defendant's website, and information obtained from the CPSC, whether alone or in the aggregate, would have put Defendant on notice of the Defect.

## CLASS REPRESENTATION ALLEGATIONS

38.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

39.     Plaintiff also seeks to represent a subclass of all Class Members who purchased the Products in the State of California (the "California Subclass"). Excluded from the Class are persons who made such purchases for purpose of resale.

40.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

41.     At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass members are so numerous that joinder of all members is impracticable.

42.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(b)     whether Defendant's conduct was unfair and/or deceptive;

(c)     whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

(d)     whether Plaintiff and the Class sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

43.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the California Consumer Legal Remedies Act as well as California's Unfair Competition law.

44.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products, and Plaintiff sustained damages from Defendant's wrongful conduct.

45.     Plaintiff will fairly and adequately protect the interests of the Class and Subclasses and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class or the Subclass.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47.     The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant

from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class or Subclass members are not parties to such actions.

<u>COUNT I</u>
**Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.***

48.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

49.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

50.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

51.     Defendant violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out Products as fit for use as treadmills, when in fact the products were defective, dangerous, and useless.

52.     The Defect at issue here involves a critical safety-related component of the Products, and it was unsafe to operate the Products with the Defect.

53.     Defendant had exclusive knowledge of the Defect, which was not known to Plaintiff or class members.

54.     Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect.  Specifically, by displaying the Product and describing its features, the product packaging and Defendant's website implied that

the Product was suitable for use as a treadmill, without disclosing that the Products had a critical safety-related defect that could result in harm to users of the Product.

55.     Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

56.     On December 23, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

**COUNT II**
**(Violation of California's Unfair Competition Law)**

57.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

58.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

59.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

60.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

61.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

62.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

63.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

64.     Plaintiff and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

65.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Products.

66.     Plaintiff and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

67.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

68.     Plaintiff and the members of the California Subclass have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal

remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant difference in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

69. Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

70. Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to: (a) provide restitution to Plaintiff and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; (c) pay Plaintiff's and the California Subclass' attorney's fees and costs.

## COUNT III
### (Fraud by Omission)

71.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

72.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

73.    This claim is based on fraudulent omissions concerning the safety of consumers who use the Products.  As discussed above, Defendant failed to disclose that the Products had a dangerous Defect.

74.    The false and misleading omissions were made with knowledge of their falsehood.  Defendant is a nationwide exercise equipment distributor who knew of reports of the Products' defective and dangerous nature.  Nonetheless, Defendant continued to sell its worthless treadmills to unsuspecting consumers.

75.     The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and California Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and California Subclass to purchase the Products.

76.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and Subclass, who are entitled to damages and punitive damages.

## COUNT IV
### (Unjust Enrichment)

77.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

78.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

79.     Plaintiff and Class members conferred benefits on Defendant by purchasing the Products.

80.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were unfit for use as treadmills.  These omissions caused injuries to Plaintiff and Class members because they would not have purchased the Products if the true facts were known.

81.     Retention of those moneys also is unjust and inequitable because, as alleged above, Defendant commenced an ineffective recall that was calculated to result in few returns, and no refunds, thereby protecting profits Defendant collected from selling the defective products.

82.     Plaintiff and members of the putative class have been injured as a direct and proximate result of Defendant's inequitable conduct.  Plaintiff and members of the putative class lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

83.     Plaintiff and the members of the California Subclass have suffered an injury in fact resulting from the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money

Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant difference in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

**COUNT V**

**(Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*. and California Commercial Code § 2314)**

84.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

86.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to be used as treadmills) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

87.     The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

88.     Plaintiff and the Class members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

89.     Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

90.     Defendant impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were unsafe and defective.  Therefore, the treadmills would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

91.     Plaintiff and Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

92.     The Products were not altered by Plaintiff or Class members.

93.     The Products were defective at the time of sale when they left the exclusive control of Defendant.  The Defect described in this complaint was latent in the Products and not discoverable at the time of sale.

94.     Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and Class members.

95.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they were unfit for use as treadmills.

## <u>COUNT VI</u>
**(Breach of Implied Warranty Under the Uniform Commercial Code U.C.C. §§ 2-314, *et seq.*)**

96.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

---

97.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

98.     Defendant, as the designer, manufacturer, distributor, and/or seller, impliedly warranted that the Products were merchantable with respect to goods of that kind.

99.     Defendant breached the warranty implied in the contract for the sale of the Products because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, the goods were not fit for the ordinary purpose for which such goods are used, the goods are not adequately contained, packaged, and labeled, and the goods do not conform to the promises or affirmations of fact made on the container and label.  As a result, Plaintiff and members of the Class and Subclass did not receive the goods as impliedly warranted by Defendant to be merchantable.

100.    Plaintiff and members of the Class and Subclass purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

101.    The Products were not altered by Plaintiff or members of the Class or Subclass in a manner that would cause the Defect.

102.    The Products were defective when they left the exclusive control of Defendant.

103.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and Class and Subclass Members.

104.    The Products were defectively designed and unfit for their intended purpose, and Plaintiff and Class and Subclass Members did not receive the goods as warranted.

105.    As a direct and proximate result of Defendant's breach of the implied warranty, Plaintiff and Class and Subclass Members have been injured and harmed because (a) they would not have purchased the Products on the same terms if they

knew that the Products have a safety Defect; and (b) the Products do not have the characteristics, ingredients, uses or benefits as promised by Defendant.

## COUNT VII
### (Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)

106.   Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

107.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

108.   The Products are consumer products as defined in 15 U.S.C. § 2301(1).

109.   Plaintiff and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

110.   Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

111.   In connection with the marketing and sale of the Products, Defendant impliedly warranted that the Products were fit for use as treadmills.  The Products were not fit for use as treadmills due to the defect described in the allegations above.

112.   By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiff and the Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass members.

113.   Plaintiff and the Class and Subclass members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the defective nature of the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.   For an order certifying the nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorney as Class Counsel to represent the Class and Subclass members;

b.   For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   For pre-judgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of monetary relief;

g.   For an order awarding Plaintiff and the Class and Subclass their reasonable attorney's fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable.

Dated:  February 6, 2023                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ L. Timothy Fisher*_____

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff resides in this District.

3.      Plaintiff Ebony Cain is a resident of San Bernardino, California.

4.      Defendant Johnson Health Tech North America, Inc. is a Wisconsin corporation with its principal place of business at 1600 Landmark Drive, Cottage Grove, Wisconsin.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on February 6, 2023, at Walnut Creek, California.


 /s/ L. Timothy Fisher
L. Timothy Fisher